No. 34,060

JOHN BACKSTROM, *Appellee* and *Cross-appellant,* v. OGALLAH TOWN-SHIP, IN TREGO COUNTY, *Appellant.*

(88 P. 2d 1026)

Opinion filed April 8, 1939.

*W. H. Wagner* and *William Wagner, Jr.,* both of Wakeeney, for the appellant.

*W. L. Sayers,* of Hill City, and *John R. Parsons,* of Wakeeney, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action for damages to plaintiff arising from injuries sustained by his wife on a defective township road.

The damages as pleaded consisted of itemized medical, hospital, and incidental expenses incurred and paid by plaintiff, in the total sum of $526.50. The jury returned a verdict for $576.50. The trial court reduced it to $481.50 and entered judgment thereon.

Hence this appeal, to a consideration of which the controlling facts may be summarized thus:

The west line of Ogallah township in Trego county is a public road which runs south from its connection with U. S. Highway No. 40, at a point three miles west of the city of Ogallah. By arrangement between Ogallah township and the next township lying west of there, the responsibility for the proper upkeep of that road is imposed on Ogallah township.

Sometime in the late autumn of 1936 a considerable amount of work was done on the road.

At some unstated distance south of highway No. 40 a new cement culvert had been constructed across the township road, and a similar one at some distance further south. When this construction work

had been completed the necessary excavation work was filled in and the road leveled up to a grade a few inches above the floors of the new culverts. This occurred in the winter time, when the dirt used for filling and leveling was frozen. While this improvement and construction work was being done the road had been closed to travel, but was reopened on Saturday, January 16, 1937. A sign "Go Slow" was posted by the side of the road some 231 feet north of the first culvert.

As the weather moderated and traffic packed the freshly filled excavation dirt, a dip or depression resulted on each side of these two new culverts. These dips gradually deepened, until at the time of the accident which gave rise to this lawsuit they were of a depth variously estimated at from four inches to two feet.

On the evening of March 20, 1937, the plaintiff's wife and her two grown daughters, her grandchild, and her son-in-law, Richard Turner, were returning to their home from a trip to Hays City. They turned south on this township road. Turner was at the wheel, and his wife called his attention to the "Go Slow" sign. He testified:

"I had never been over the road before, but we were getting right up to the place and my wife, she noticed a board up in the road. We were real close to it then, and when we come right up practically to the board, where the sign was, you could see that it said 'Go Slow' on the sign. And my wife said to me, she said, 'It said "Go Slow" on that sign.' Well, I let up on the gas and put my foot on the brake and commenced to slow down a little bit. And I slowed down some. But I never figured that there was a place in the road like that from the kind of a sign they had. They just had that little sign up there to go slow, so I slowed down until we got right down to it; but when I was coming down there, the lights of the car—that was down in a low place—and the lights of the car, you know how they are when they shine across the draw or something, and that is the way it was, and I couldn't see that then until I got right practically to it. I was slowed down quite a little bit. I wasn't going so fast then. I had slowed down considerable. And I was too close then. I couldn't stop. And so I went on over it, and it was an awful bump and it throwed them around terrible in the back seat. . . Mrs. Backstrom, it hurt her terrible.

. . . . . . . . . . . . . . .

"Well, we went on south, and after we went over that first bump, she was hurt considerably and I figured she was hurt, and I was driving along pretty careful and not very fast, I should judge between 20 and 25 on south, and I guess we went on something like ¾ of a mile, and here, the first thing you know, we bumped up into another one of them. (Culverts.)"

Plaintiff's evidence tended to show that Mrs. Backstrom's injuries required that she be taken to a hospital in Hays City and that she

have the services of physicians, and that certain incidental expenses had been incurred by plaintiff.

To recover these expenses, plaintiff brought this action. Defendant's answer contained a general denial and other pleaded defenses, including the following:

"2. Defendant specifically denies that the township trustee of Ogallah township, in Trego county, Kansas, had any notice of the defective condition of the bridges, culverts or highway on the road in question and as alleged in plaintiff's petition, or had any five days' notice as required by the provisions of G. S. 68-301."

The jury made special findings of fact. Those pertinent to the issue of notice to the township trustee read:

"1. Was there a defect in the highway, bridge or culverts at the place where Anna Backstrom was injured on March 20, 1937; and, if so, what conditions constituted such defect and when did the defect first occur in such highway, bridge, or culverts? A. There was a defect caused by settling of ground which occurred some time prior to March 23, 1937.

"2. If you find that a defect existed in the highway, bridge or culverts at the place where Anna Backstrom was injured March 20, 1937, did W. W. Harvey, the township trustee, have five days' actual notice of such defect? A. Yes.

"3. If you find that W. W. Harvey did have five days' actual notice of such defect, then state how and when such notice was received by him. A. His own personal knowledge prior to March 23, 1937.

. . . . . . . . . . . .

"11. At the time and place of the injury suffered by Anna Backstrom, was there a depression in the roadbed on the north side of the north culvert and a fill covering the top of the said culvert, and also a depression in the roadbed on the south side thereof? A. Yes.

. . . . . . . . . . . .

"16. If you answer question No. 14, 'Yes' [fact of defect at south culvert], do you find that the township trustee of Ogallah township had more than five days' notice of such defect? A. Yes.

"17. Do you find that the trustee, W. W. Harvey, traveled said road on or about February 1, 1937, and thereby learned of the defects, if any, found in answers 11 and 13? A. Yes."

Defendant's motion to set aside these and other findings on the alleged grounds that they were unsupported by the evidence and contrary thereto was overruled. So, too, was its motion for a new trial based on all the usual grounds.

Going directly to the vital matter of this appeal, we shall first scrutinize the record for any competent evidence that W. W. Harvey, township trustee, had five days' notice of the particular defect or defects in the road which caused the injuries to plaintiff's wife.

Counsel for the township contend that evidence of such notice, which the statute makes a prerequisite to the township's liability, does not exist.

To withstand that contention plaintiff directs our attention to the following evidentiary incidents. The accident occurred on March 20, 1937. Two days later, on March 23, Harvey, trustee, had a conversation with Turner, who had operated the automobile in which Mrs. Backstrom was injured. Turner testified:

"Q. And what did he (Mr. Harvey) say, if anything, with reference to his knowledge about that condition? A. Well, we said something to him about it, and he said, 'Yes, I know that road was in bad shape.' "

On cross-examination, however, Turner testified that no mention was made of the "dip" at the north culvert, and that the trustee did not say he knew it was there.

Another witness testified he heard a conversation between plaintiff and the trustee, which occurred after the accident, in which the trustee said "he knowed the road was in bad shape and intended to have it fixed, but this road overseer's wife was sick down at Hays and he was waiting for her to get well, so he could have the road fixed."

The foregoing testimony was not evidence of notice of the particular defect or defects which caused Mrs. Backstrom's injury, nor did it constitute evidence to establish the statutory requirement of five days' notice to the trustee of the defect prior to her injury.

Another evidentiary incident relied on to prove the township trustee had five days' notice of the defect was based on the fact that early in the week, following the reopening of the road, the trustee had passed over the road. The road was opened on Saturday, January 16. Some day "early in the week following" would be not later than January 20, by which time the dip or depression which caused the plaintiff's injury could scarcely have started. Certainly there was no evidence that on that single journey the trustee became aware of the existence of the particular defect or defects which injured Mrs. Backstrom on March 20, two months later.

The special question No. 17 assumed that the trustee had traveled over the road on or about February 1. Over objection of defendant, the trial court admitted a portion of the trustee's testimony given at a former trial, which may have been the basis for question 17; but passing for the moment the question of the propriety of such a

practice when the trustee was present in court, a critical perusal of that testimony did not warrant the formulation of question 17 nor did it furnish an evidential basis for an affirmative answer. The challenged testimony was as follows:

"Q. Do you know about how long it was after the road was opened [January 16] when you traveled it that one time? A. I imagine about 10 days.

"Q. After the road was opened? A. You mean after the barricades were taken down; yes.

"Q. When were the barricades taken down? A. They said they took them down the day they put up the signs and filled in. That was on Saturday evening.

"Q. What month? A. I think it was about the 22d of January. I am not positive.

"Q. You are not positive? A. I think it was.

"Q. That was when the barricades were taken down? A. Yes.

"Q. Then you traveled the road about 10 days after that? Did you travel across this entire mile of road that has been in question at that time? A. Yes, sir."

The record makes it clear that the road was reopened for travel on Saturday, January 16. The trustee testified that he imagined it was ten days later that he passed over the road, but on reflection he testified that it was on January 22. It is therefore clear that there was no basis for the assumption that the trustee's trip over the road was about February 1, and no basis for the jury's affirmative response to question No. 17.

We should not leave this point, however, without voicing our disapproval of the unusual practice of reading the testimony of the witness given at a previous trial when that witness was present in court ready to be called in the pending trial. Some sophistical apology is given in plaintiff's brief for this practice, whose reasoning, insofar as we understand it, we are bound to condemn. What particularly intrigues us is the intimation in the record that this court has given its sanction to such a practice, but we are not favored with citations from our reports which would permit us to distinguish or make comment thereon. The trustee of Ogallah township, W. W. Harvey, was just a witness in this case, like any other. If properly called, and he had given testimony at variance with his testimony given at a former trial, he could be sharply cross-examined thereon; but so, too, could every other witness. Although the witness Harvey was trustee of Ogallah township, he was not the defendant in the action, he was not a party defendant; what he testified to at the first trial was not "an admission by the defendant."

The only way "admissions" on the part of the defendant, Ogallah township, could have been made would have been in its answer or by its counsel in charge of the defense of this lawsuit. The fact that the witness Harvey might wish to change his testimony at the second trial did not justify the maneuver of reading his testimony given at the first trial rather than calling him as a witness at the second trial.

Before the parties rested, Harvey was called and testified positively that he traveled the road just once—on the first Tuesday following the reopening of the road on Saturday, January 16. That would have been on January 19. In his examination he was then properly catechized touching his testimony given at the previous trial, where he had said he "imagined" it was ten days after the road was reopened, but a fair reading of his testimony given at both trials makes it clear that the date of his single trip over the road after its opening on January 16, 1937, was not later than January 22, at which time the dips or depressions which caused the accident to Mrs. Backstrom were not shown to exist—certainly not to such size and depth as to have arrested his attention.

Damage suits against townships and counties, and in more recent years against the state itself, for injuries sustained on public roads have been many. It seems such a little thing for a jury to reach into the public treasury to hand out a generous largess to some hapless individual who through sheer accident, or through his own or another's fault, has been injured on a public highway! To curb that natural tendency the legislature has imposed but one arbitrary requirement which it has been the bounden duty of this court to enforce. That requirement is that to fasten liability on a township for injury sustained by a defective bridge, culvert or highway on a township road, it must appear that the township trustee *had notice of the specific defect for at least five days prior to the time* when such damage was sustained. (G. S. 1935, 68-301.)

To enforce this statutory prerequisite and to withhold damages payable out of the public treasury where it has not been fairly met has been the duty and responsibility of this court many, many times. In *Arnold v. Coffey County Comm'rs*, 131 Kan. 343, 347, 291 Pac. 762, the leading cases are cited on this point, where in part this court said:

"This notice must amount to actual knowledge. (*Hari v. Ohio Township*, 62 Kan. 315, 62 Pac. 1010.) The fact that the defect had existed for a long

time, or that the chairman, if diligent in the performance of his duty, should have known of the defect, is not sufficient. (*Parr v. Shawnee County,* supra.) It must be shown that he had actual knowledge of the specific defect which caused the injury. (*Jones v. Walnut Township,* 59 Kan. 774 [memo only], 52 Pac. 865; *Parr v. Shawnee County,* supra; *Valley Township v. Stiles,* 77 Kan. 557, 559, 95 Pac. 572.) Defendant's demurrer should be sustained if the petition does not allege such actual knowledge (*Hari v. Ohio Township,* supra; *Higman v. Quindaro Township,* 91 Kan. 673, 139 Pac. 403), or if the evidence does not show it (*Wagner v. Edwards County,* supra; *Rosebaugh v. Allen County Comm'rs,* 120 Kan. 266, 243 Pac. 277). This showing may be made by any competent evidence, direct or circumstantial (*Story v. Brown County,* 116 Kan. 300, 302, 226 Pac. 772; see, also, *Cloud County v. Vickers,* 62 Kan. 25, 61 Pac. 391; *Eric Township v. Beamer,* 71 Kan. 182, 79 Pac. 1070; *Mosier v. Butler County,* 82 Kan. 708, 710, 109 Pac. 162; *Higman v. Quindaro Township,* 89 Kan. 476, 132 Pac. 215; *Amis v. Jewell County,* supra; *Joyce v. Quindaro Township,* 112 Kan. 513, 212 Pac. 68); but the showing of the chairman's actual knowledge of the specific defect in the bridge, culvert or highway which caused the injury for which damages are sought as much as five days before the injury is essential to liability. (See cases above cited; also, *Leisenring v. Pleasant Hill Township,* 108 Kan. 29, 193 Pac. 893; *Burgess v. Center Township,* 115 Kan. 346, 223 Pac. 475.)"

Still more recent cases which turned on the evidence or want of evidence of the required five days' notice to the statutory officer entitled thereto were: *Lawson v. Sumner County Comm'rs,* 144 Kan. 450, 453-454, 61 P. 2d 1365; *Neiswender v. Topeka Township,* 148 Kan. 113, 79 P. 2d 839.

This court holds that the record does not contain competent and sufficient evidence to prove that the township trustee of Ogallah township had five days' actual notice of the particular defects on the township road prior to the accident to plaintiff's wife on March 20, 1937; and as this conclusion necessarily disposes of the other questions raised by appellant, as well as the one presented in the cross-appeal, they need not be considered.

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.