No. 42,193

RAY SCHMIDT and LEONA E. SCHMIDT, His Wife, *Appellees,* v. THE BOARD OF COUNTY COMMISSIONERS OF LYON COUNTY, KANSAS, *Appellant.*

(363 P. 2d 539)

Opinion filed July 8, 1961.

*Richard Mankin,* county attorney, argued the cause, and *Owen Samuel,* of Emporia, was with him on the briefs for the appellant.

*Samuel Mellinger,* of Emporia, argued the cause, and *John G. Atherton,* of Emporia, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This is an appeal from the trial court's order overruling defendant's motion for new trial, from the judgment made upon the jury's verdict in favor of plaintiffs, and from other rulings and orders of the trial court.

Plaintiffs commenced this action against the Lyon county board of commissioners to recover damages for the death of their seven year old son, Virgil Schmidt, on October 14, 1959, proximately caused by the collapse of a county-maintained bridge which had been in use since 1892. The collapse resulted when a dead jack oak tree thirty to forty feet long in close proximity to the bridge abutment wing fell upon the bridge prior to 8:00 o'clock a. m. on the day in question. The county road and the bridge, which was seventy feet long and fourteen feet wide, both ran north and south and crossed Eagle Creek in a wooded area.

On the morning of October 14, 1959, as usual, plaintiffs' car driven by the oldest of their children, Diana, and having as passengers three of their other children, was proceeding north along the county road. Because of the bridge collapse the car pitched into the bed of Eagle Creek and Virgil was killed. Vertical concrete abutments were situated at both the north and south ends of the bridge upon which rested the ends of steel beams that extended across the creek north and south. The plank floor and superstructure, including the trusses, rested on the beams.

The jack oak tree was on the north side of the creek and at the north end of the bridge. Its trunk was within six inches of the northwest wing of the west edge of the north abutment. The tree was two to three feet in diameter at its base and according to the testimony of a surveyor who surveyed the area after the collapse of the bridge, the center of the hole left after the tree fell was twenty feet from the center line of the bridge. No unusual weather conditions likely to cause the tree to fall had occurred the previous night so that with the exception of one defense witness who thought he had, in the current year, seen some green branches on the tree, the evidence, though conflicting as to whether the tree had been dead three or more years, showed that the tree fell because it had been dead for such a period of time that the base had rotted off the roots. Although there was some conflicting evidence that the tree was remembered as being straight, or as not appearing to be a

menace to the bridge, or traffic using the bridge, there was abundant evidence that the tree leaned noticeably toward and over the bridge and many of the limbs and branches were over and above the bridge, which created a distinct menace in view of the fact the tree had been dead for so long a time.

Three years prior to the trial the landowner, in the presence of a neighbor, called the condition of the dead tree to the attention of the then county patrolman, Ralph Ames, while Ames was operating a road maintenance machine in the area. The landowner offered to remove or help remove the tree, but the patrolman did not then, or at the time of trial, believe the condition presented any problem and he did not report it to Joe Dieker, superintendent of roads and bridges of Lyon county. However, on April 16, 1959, in response to a report from Ames that the floor of the bridge needed plank repair, Dieker made an inspection of the bridge and after first stating he had not noticed the tree, he testified that in examining the abutments and wings of the bridge for cracks, etc., since the tree was about six inches from the north abutment, he probably saw the tree; he had noticed no undercutting of the abutment because the tree was back at the end of the wing and finally, he testified he had had to see the tree and whatever condition the tree was in, he had seen it at the time.

The trial court instructed the jury, a verdict for plaintiff in the sum of $12,100.00 was returned and accepted by the court, and judgment entered. Defendant's motion for new trial was overruled. Hence this appeal which presents the question, "Did the dead jack oak tree and the circumstances surrounding it on April 16, 1959, render the bridge in question defective within the provisions of G. S. 1949, 68-301?" The statute, in pertinent part, reads:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge . . . may recover such damage from the county . . . wherein such defective bridge . . . is located, as hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge . . . which by law, or agreement entered into pursuant to law, the county is obligated to maintain. . . ."

Mention should perhaps be made that the matter of notice is not before us in this appeal and the sole question, as stated above, is a question of law under 68-301. On this proposition, see *Thompson v. Morris County Comm'rs*, 170 Kan. 74, 223 P. 2d 749, wherein a

statement was made that is found in many of our decisions to the effect that 68-301 fixing a county's liability is almost identical with 68-419 fixing the state's liability for defects in state highways. The cases as to what constitutes a defect in a state highway are handled on an individual basis. One such case was *Cronin v. State Highway Commission*, 182 Kan. 42, 318 P. 2d 1066, where it was stated that ". . . in the final analysis it is the fixed policy of this court to handle each case separately and to either include it in or exclude it from the operation of the statute." (p. 45.) The same rule is obviously appropriate here.

There are, of course, a multitude of cases covering defects both on the traveled, concrete slab, or blacktop portions of highways as well as on portions of the right of way located at the sides or edges thereof and including ruts, ditches hidden by weeds, etc. Recovery has been allowed in some cases and denied in others. We note that *Lawson v. Sumner County Comm'rs*, 144 Kan. 450, 61 P. 2d 1365, had two things in common with our case. There a bridge collapsed into the Ninnescah River as the plaintiff and her husband were crossing it on March 19, 1934. In 1923 the bridge had been damaged by flood and driftwood was lodged against it which pushed the bridge trusses out of alignment. The downstream side of the bridge bulged outward so the weight of the bridge no longer was supported through the center of gravity. A good description of a "Pratt" type bridge was given in the Lawson case by the Honorable John S. Dawson, the writer of the opinion, and while the bridge involved in our present case was referred to as a "pony" bridge, from the description it appears to be the same type.

No decision is cited and our research has produced none under our statutory provisions to fit our particular and unusual defect and the circumstances surrounding it. Due to the location of the tree, its size and weight, and the fact it had been leaning to the southeast and over toward the bridge, and the further fact it had been dead for at least three years, the falling of the dead tree was only a matter of time and the resulting collapse of the bridge, which the county had an obligation to maintain in a safe condition, constituted a defect under the contemplation of 68-301. The Lawson case relates that such a bridge was never a heavy duty bridge and here we have the further element that the bridge was weakened from age as shown by the need of new planks in the floor thereof.

The conclusion is inescapable that the trial court did not err in overruling defendant's demurrer to plaintiff's amended petition and the judgment should be and it is hereby affirmed.  So ordered.

Parker, C. J., Price and Fatzer, JJ., dissent.