No. 45,602

F. Dean Kelley, *Appellee*, v. Broce Construction Company, Inc., and the State Highway Commission of the State of Kansas, *Appellants*.

(468 P. 2d 160)

Opinion filed April 11, 1970.

*Byron G. Larson*, of Williams, Larson, Voss and Strobel, of Dodge City, argued the cause and was on the brief for the Broce Construction Company, Inc., appellant.

*John H. Morse*, Assistant Attorney General, argued the cause, and *Barton E. Griffith, Roger K. Weatherby* and *Thomas H. Bornholdt*, Staff Attorneys, and *A. E. Kramer*, of Kramer, Nordling and Nordling, of Hugoton, were with him on the brief for the State Highway Commission of Kansas, appellant.

*Gene H. Sharp*, of Vance, Hobble, Neubauer, Nordling and Sharp, of Liberal, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a judgment in an action for injuries resulting from a defect in a highway.

The facts must be stated at some length. For the purpose of some brevity F. Dean Kelley, the plaintiff and appellee, will be referred to as Kelley; the State Highway Commission of the State of Kansas, defendant and appellant, will be referred to as Highway Commission, and the Broce Construction Company, Inc., defendant and appellant, will be referred to as Broce.

The allegedly defective highway located in Stevens County Kansas was designated U. S. 56 and was undergoing realignment construction at the time of the accident.

During the summer of 1965, Broce began work under its contract with the Highway Commission to surface the new realigned segment of U. S. 56. This contract contemplated a partial acceptance of the segment located between Moscow, Kansas and the Cimarron River Bridge prior to the completion of the road. This segment was to be opened at the request of the contractor so that shoulder material from the old road could be used to complete the new road. On October 1, 1965, a segment of the new road was opened by the resident engineer of the Highway Commission in response to a request made by the contractor two or three days prior thereto.

On the morning of October 1, 1965, the resident engineer and the maintenance department district foreman, who was in charge of placing signs on the segment of newly opened highway, met on the job and discovered that traffic could not be channeled as contemplated in the plans. It was decided that traffic could be routed onto the new highway at Moscow, Kansas and then carried on the realignment or new highway in a northeasterly direction until it reached the point where the two roadways intersected. At that point traffic would be diverted back onto existing, or old, U. S. 56. During the daylight hours of October 1, 1965, the maintenance crew completed the signing of this route. At a point 600 feet to the southwest of the intersection of the two roadways a State Highway Commission employee placed a right reverse curve sign with a 50 MPH speed plate attached to it. The same crew added a 10 foot barricade to an existing 10 foot barricade of the contractor across the surfaced portion of the new road 50 feet north of the intersection of the two roads. They attached to this 20 foot barricade a "Road Closed" sign, a red arrow pointing to the right, and three delineators or hazard markers. This work was completed shortly before 5 P. M. on October 1, 1965.

North

Bridge

Barricades

Old highway

New highway

Accident

Traffic flow

Highways after 4:30 p.m.
October 1, 1965

Without pride in our artistry or a claim of accuracy we present above a drawing which tends to depict the situation at the scene of the accident.

In the afternoon of October 1, 1965, Kelley left his home in rural Guymon, Oklahoma on his way to Satanta, Kansas to attend a football game. Kelley drove to Moscow, Kansas in his pick-up truck where he came upon a clearly marked detour which put him on what he recognized as a new blacktop highway. He followed this new road until he hit the barricade constructed across the new highway just north of the intersection with the old highway. Kelley testified he did not see the curve sign which was located 600 feet southwest of the intersection of the two roadways.

Kelley estimated his speed immediately prior to the accident at 45 to 50 MPH. When he saw the barricade, he applied the brakes and swerved to the right. The left side of his truck hit the barricade and the truck continued on into the ditch on the right side of the new roadway.

There was a difference in the elevation of the two roadways at this intersection of one foot or more. A ramp was built sloping from the elevation of the new road down to the old road. The ramp was 50 to 100 feet long. Prior to October 1, 1965, traffic had

been carried exclusively along old U. S. 56. Where the old highway was intersected by the newly constructed roadway traffic crossed over the new road and continued on old U. S. 56 until it crossed the Cimarron River.

Jess Parum testified he was a passenger in a car proceeding east on the new highway and came upon the accident scene after it had happened but before the investigating officers arrived. He was going to the same football game that plaintiff was attending. He further testified:

"Q. Just tell us, tell the jury in your own words what happened as you approached.

"A. Well, we didn't see anything until we come around the curve and our lights, when the lights come around, why, there was evidence of a barricade there and Bob, the other driver, I said, 'I think that was a barricade. I think we better stop.' So he stopped. That was what was left of the barricade, what we saw.

"Q. Did you come back to the accident scene then?

"A. Yes.

"Q. Now, you say that you started to go around the curve. What direction was this curve?

"A. Well, we were going, I think we was going east and turned a little left turn.

"Q. It was a left curve?

"A. Yes, sir.

"Q. And could you tell this jury where your vehicle was when you first noticed what was left of this barricade?

"A. Well, it just seemed to me we were right in it when we saw it.

"Q. Were you far enough away that you would have been able to stop your vehicle?

"A. No. We agreed that if somebody else had not hit it we probably would have.

"Q. And as you were out there that night, Mr. Parum, did you see any lights in the area where this barricade was?

"A. No, I didn't.

"Q. And as you approached where this barricade was did you see a highway marker sign indicating a curve or jog to the right at fifty miles per hour?

"A. No."

There were no lights on the barricades.

The jury returned a verdict in favor of Kelley in the amount of $10,000 against the Highway Commission and Broce. They have appealed.

As the liability of the Highway Commission and Broce is based on different legal grounds, the appeals will be considered separately. We will first consider the appeal of the Highway Commission.

The Highway Commission presents several grounds as to why judgment should not have been rendered against it. Among them is the contention that there was no notice of the defect five days before the accident. Our attention is called to K. S. A. 68-419 which provides insofar as material here:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge or culvert on, or defect in a state highway, not within an incorporated city, may recover such damages from the state; that is to say, such recovery may be from the state when the director of highways, or state highway engineer, or any member of such state highway commission, or any foreman, patrolman, or other employee in charge of the construction, maintenance or upkeep of such highway, shall have had notice of such defects five (5) days prior to the time when such damage was sustained, . . ."

The petition was in general form and left the specifics open. We look to the preliminaries of the trial for the specific defect claimed. In an answer to an interrogatory the appellee stated:

"The defect was the construction of the State Highway Commission and its contractor who created conditions where the road appeared to turn and didn't, which made the highway unsafe for travel."

At pretrial conference appellee described the defect as follows:

"It is our contention that to leave the highway in a condition which would lead a driver to turn off believing he was following it and not to mark it and guard it constitutes common law negligence and also constitutes a violation of 2102 . . ."

In its opening statement to the jury appellee again described the defect:

"Now, it is the contention of the plaintiff that the only way that the highway commission is liable in Kansas for a defect in the highway and we contend when you build a road so that it appears you are going to turn to the left but when in fact you turn to the right that you have built in a defect to the traveling public. You have made it so that it is not safe for the ordinary motorist driving along at nighttime such as Mr. Kelley was and the evidence will show in this case. . . ."

The jury answered special questions involving the Highway Commission as follows:

"If you find for the Plaintiff against the State Highway Commission state:
"a) The defects existing in the highway five days before October 1, 1965, that were a proximate cause of Plaintiff's injury.
"ANSWER: The new hiway crossing over old hiway at curve with resulting difference in height created the defect.

"(*b*) What agent, employees, officials or highway patrolmen of the defendant Highway Commission had five days notice of such defects?

"ANSWER: Resident Engineer, Mr. Winters."

The Highway Commission contends that there could not have been five days notice of the defect in the highway because the condition had only been created in the late afternoon and the accident occurred in the early evening.

Kelley contends the Highway Commission, through its agents, knew of the conditions which created the defect for more than five days and this was sufficient even though the highway had been open for but only a few hours.

The right of the action against the Highway Commission is not based on negligence. The liability is purely statutory. There can be no liability except as expressly provided by the legislature although the results may sometimes appear harsh and unjust.

In *Rosebaugh v. Allen County Comm'rs.*, 120 Kan. 266, 243 Pac. 277, in considering a similar statute, we stated:

".   .   . If the county were suable to the same extent as a city, neglect to comply with a statutory regulation designed to make travel on a highway safer would entail liability to a person injured on account of the negligence. The county, however, as an agent of sovereignty, rests under no common liability for negligence of its officers. It is not subject to actions for damages except so far as the legislature has expressly provided. The result is, failure to discharge the duty imposed by the statute of 1917 merely renders the highway defective, and liability for the defect must be enforced under the statute of 1887. (*Story v. Brown County,* 116 Kan. 300, 226 Pac. 772.)" (p. 267.)

Again in *Payne v. State Highway Comm.*, 136 Kan. 561, 16 P. 2d 509, we said:

"The right of action under this statute is not founded on the law of negligence. Diligence on the part of officials is no defense if the highway is defective within the terms of the statute, and conversely the lack of due care on the part of the officials does not of itself create liability. Negligence enters into the case only on the part of the party sustaining the injury, and may defeat recovery. The liability is statutory. (*Arnold v. Coffey County Comm'rs,* 131 Kan. 343, 291 Pac. 762, and cases there cited. See, also, *Hollinger v. Dickinson County,* 115 Kan. 92, 222 Pac. 136; *Gorges v. State Highway Comm.,* 135 Kan. 371, 10 P. 2d 834.)" (p. 563.)

In order to create liability under the statute the defective condition must have existed for as much as five days. In *Arnold v. Coffey County Comm'rs.*, 131 Kan. 343, 291 Pac. 762, we said:

".   .   . This showing may be made by any competent evidence, direct or circumstantial   .   .   .   but the showing of the chairman's actual knowledge

of the specific defect in the bridge, culvert or highway which caused the injury for which damages are sought as much as five days before the injury is essential to liability. . . ." (p. 347. Citations omitted.)

Again in *Rockhold v. Board of County Commissioners*, 181 Kan. 1019, 317 P. 2d 490, we stated:

"It must be recognized that less than five days elapsed between the creation of the defect in the highway and the accident which caused the death of plaintiff's son in the instant case. Therefore, it is impossible to meet the five-day requirement of notice in the statute.

. . . . . . . . . . . .

"Subsequent development of the Kansas law on the precise point presented in this case, however, is contrary to the construction propounded by appellant. A case impossible to distinguish on the facts before this court is *Rosebaugh v. Allen County Comm'rs*, supra [120 Kan. 266, 243 Pac. 277]. While there the injuries were sustained at 9:30 p. m., the last three loads of gravel dumped on the county highway at 5:00 p. m. of the same day were not spread and thus caused a defect in the highway. The petition alleged the obstruction created by those three loads of gravel was left without warnings, guards, barricades or red lights from 5:00 p. m., to 9:30 p. m., on the day of the accident. The court there affirmed the judgment of the trial court which sustained a demurrer to the petition, saying:

" '. . . Conceding that the chairman had actual notice of the defect because the board was doing the work, an indispensable condition of liability— notice for at least five days—did not exist.' (p. 268.)

"This court has steadfastly adhered to the foregoing construction of the statute. . . ." (p. 1022.)

The five days notice should be of the particular defect which caused the accident, and not merely of conditions naturally productive of such defect and subsequently in fact producing it. (40 C. J. S., Highways, § 263, p. 312.)

In considering a similar statute, in *Backstrom v. Ogallah Township*, 149 Kan. 553, 88 P. 2d 1026, we said:

". . . That requirement is that to fasten liability on a township for injury sustained by a defective bridge, culvert or highway on a township road, it must appear that the township trustee *had notice of the specific defect for at least five days prior to the time* when such damage was sustained. (G. S. 1935, 68-301.)" (p. 558.)

Applying the facts in this case to the law as stated, we do not believe the notice was sufficient to fall within the five day requirement of the statute.

All of the conditions pleaded and relied on by the plaintiff to constitute a defect were created and established on October 1, 1965, the same day as the accident. The signs were erected on October 1, 1965; the barricade to the northeast of the intersection

which had been maintained by Broce Construction Company was enlarged by the addition of signs, markers and a second barricade of equal size on October 1, 1965; the failure to establish warning lights was an act of omission occurring on October 1, 1965, and the condition where the road appeared to turn left when in fact it turned right was established October 1, 1965. Not even the plan to do these things had been in existence the requisite five days. The request to open the construction project to traffic was made to the resident engineer only two or three days prior to October 1, 1965, and at that time the request was to open the entire route of the construction project. The condition found by the jury to be a defect was not in existence to affect the road as a means of transit for five days. Prior to October 1, 1965, traffic was carried on existing U. S. 56 straight across the ramp on both sides of the construction project. It was not until October 1, 1965, that traffic was routed so that it was placed on the new highway from Moscow to the intersection and thence diverted off the new highway back to the old road and thence eastward along the old road as before.

The judgment against the State Highway Commission must be reversed for lack of five days notice of the specific defect.

We now approach the appeal of the Broce Construction Company, Inc., referred to as Broce.

Kelley contends that Broce was in negligent violation of K. S. A. 68-2102 which provides:

"Every person who shall have entered into a contract to make any improvement, or any municipality which has undertaken for itself the making of any improvement, shall, where the work so undertaken requires the closing of any highway or the rendering of the same impassable or dangerous to travel while said improvement is being made, place at the intersection of all highways leading thereto, barricades and warning signs, advising the public that said highway is closed or is impassable or dangerous to travel. *Such warning signs shall be illuminated in the nighttime by warning lights.*" (Emphasis supplied.)

The jury's answer to a special question also fixed liability of Broce as insufficient lighting at the barricade—

"If you find for the Plaintiff against Defendant Broce Construction Company, state the acts of negligence which were the proximate cause of Plaintiff's injury.

"ANSWER: Insufficient lighting at station 509 + 70."

Broce attempts to refute liability on several grounds.

It is first contended that the action of the Highway Commission relieved Broce of any statutory liability.

We cannot agree with this contention. The statute places the

responsibility on the contractor making improvements to place barricades and warning lights advising the public that the highway is closed or impassable or dangerous to travel.

The word "improvement" as used in K. S. A. 68-2102 is defined in K. S. A. 68-2101 (c) as follows:

"The word 'improvement' shall mean the repair, building, rebuilding, alteration, construction, or reconstruction of any highway or part thereof, or the grading or regrading of the same, or the erection, construction, building, rebuilding, or repair of any bridge or culvert on any highway."

The undisputed facts are that Broce had not completed the work east or beyond the barricade. Broce had had a barricade at the point where the accident occurred for some time before the accident to keep traffic from going east on the new road. All the Highway Commission did to the barricade was place another section beside it so that the whole road was blocked instead of just one lane. The barricade that Broce had up and knew about was to keep traffic from going east on the new highway. Broce's engineer and general superintendent testified he was supervising the job in question and that his company, in the past, had taken the responsibility for this barricade and he did not send anyone to the crossover to check on their barricade on the day of the accident.

The Highway Commission had not established a detour as provided by K. S. A. 68-2103 but permitted use of the new road for the accommodation of the contractor.

We have no precedents to guide us in the interpretation of the statute but we are forced to conclude that under the facts and circumstances Broce was a contractor engaged in the improvement—building—of a highway and obligated to provide a barricade and warning lights at the place of the accident.

Broce contends that the evidence proves Kelley guilty of contributory negligence as a matter of law. The facts heretofore presented refute this contention.

Broce stresses the rule that the operator of a motor vehicle is required to so articulate his speed that he can stop or turn aside within the range of the vision of the headlights.

This rule has many exceptions. Under modern traveling conditions it would appear that the exceptions have become the rule. In *Secrist v. Turley,* 196 Kan. 572, 412 P. 2d 976, we held:

"The rule announced by this court, that where a person drives an automobile along a highway on a dark night at such speed that the car cannot be stopped or turned aside within the range of vision of the lights on his car, such

person is guilty of negligence as a matter of law, has many exceptions involving questions of fact." (Syl. ¶ 2.)

In the opinion we stated:

". . . A traveler on the highway at night cannot lay a trap for a fellow traveler and escape liability. . . ." (p. 577. See, also, *Newman v. Case*, 196 Kan. 689, 413 P. 2d 1013.)

We believe the same rule should apply to a construction contractor working on a highway.

The *Secrist* case also lists the cases setting out the exception to the rule. They will not be repeated here.

Under modern traveling conditions we do not believe the rule should be applied where there is an unlighted obstruction left on the highway after it has turned dark.

Other alleged errors, most of which appear to be duplicates of the first contention, have been examined and found to be without merit.

The judgment is affirmed as to the Broce Construction Company, Inc., and reversed as to the State Highway Commission of the State of Kansas.

APPROVED BY THE COURT.