Ray Saari, Respondent, v. State of New York, Appellant. (Claim No. 30871.)

Robert McCoy, Respondent, v. State of New York, Appellant. (Claim No. 30882.)

John G. Nicholson, Respondent, v. State of New York, Appellant. (Claim No. 30883.)

John Smeaton, Respondent, v. State of New York, Appellant. (Claim No. 30884.)

Third Department, November 12, 1953.

*Nathaniel L. Goldstein, Attorney-General (Henry Valent of* counsel), for appellant.

*Harold E. Simpson* for Ray Saari, respondent.

*Walter J. Mahoney* for Robert McCoy and others, respondents.

*Per Curiam.* Each of the four claimants has had judgment against the State for damages by reason of personal injuries sustained as a result of being struck by a racing car during the International Grand Prix Auto Races at Watkins Glen, N. Y., on September 23, 1950. The State appeals from each judgment on the ground that there is no liability on the part of the State, and on the further ground that the damages are excessive. The facts are recited in detail in the comprehensive memorandum decision of the Court of Claims, and will be dealt with here only in a general way.

The auto races in question were jointly sponsored by the Village of Watkins Glen, the Watkins Glen Chamber of Commerce, and the Sports Car Club of America, Inc., under a permit granted by the State through the Department of Public Works. The race course was 6.6 miles in length over ordinary public highways, a portion of which, including the point where this accident occurred, was a State highway. The State issued this permit pursuant to subdivision 4 of section 88 of the Vehicle and Traffic Law, which reads as follows: " No races or contests for speed shall be held upon any street without the permission of the authorities of the state, city, town or village having jurisdiction and unless the same is fully and efficiently patrolled for the entire distance over which such race or contest for speed is to be held." The permit specified in detail the conditions

under which the races were to be run and designated areas which were forbidden to spectators. While the permit obviously attempted to delegate to the sponsors the duty of policing and patrolling the course, it provided for consultation with representatives of the State in connection therewith and retained to the State the right to revoke the permit if its conditions were not met. Representatives of the State Department of Public Works were present and went over the course on the day of the races.

Claimant Saari was a member of the Mecklenburg Volunteer Fire Department, and under a mutual assistance policy attended the races in the line of duty at the request of the Fire Chief of the Watkins Glen Fire Department. He was assigned to duty with a fire extinguisher at the point where he was injured, for the purpose of extinguishing any possible fires and removing the driver in case of an accident. It appears that the races would not have been permitted unless a fireman so equipped was stationed at this point. The other three claimants were spectators who had come to Watkins Glen to witness the races. They were standing near Saari, and all four were at a point on the shoulder of the road about nine feet from the paved portion thereof on the outside of a nine and one-half degree curve. There is evidence that claimants were told to stand there by a National Guardsman who was apparently performing patrol duty. On the map issued in connection with the permit from the State the area occupied by claimants was forbidden to spectators.

The Court of Claims has found, and the record sustains the finding, that there were no warning signs or signs of any nature indicating that the area was forbidden, and that there were no ropes, barriers, or other devices to indicate that spectators should not stand there, and has further found that none of the claimants were warned or told not to stand there. During one of the races a racing car left the highway on this curve and struck the claimants, causing the injuries for which they have recovered.

Traffic experts testified that a safe speed at this curve for ordinary travel was forty miles per hour, and the evidence is that the racing cars were traveling at eighty miles per hour or more. The Court of Claims has found that due to the inherent danger of automobile racing along an unprotected course upon a highway not designed for racing, such races constituted a nuisance '' as to those persons particularly affected thereby, for which they have a private right of action.'' The lower

court also found that the State was negligent in that it had a nondelegable duty to see that the highway was "fully and efficiently patrolled for the entire distance over which such race or contest for speed is to be held," and that the course was neither fully nor efficiently patrolled. It was further held that under the particular circumstances involved in these cases none of the claimants had assumed the risk of injury. We think that the record fully sustains the findings of the Court of Claims.

The nature of the injuries sustained by each claimant is fully set forth in the memorandum of the lower court, and the amount of damages awarded in each instance may not be said to be excessive as a matter of law.

Each judgment should be affirmed, with costs to each respondent.

FOSTER, P. J., BERGAN, COON, HALPERN and IMRIE, JJ., concur.

Judgment in each case affirmed, with costs to each respondent.