No. 56,065

PURITAN-BENNETT CORPORATION and PURITAN-BENNETT AERO SYS-
TEMS CO., *Appellees*, v. ROBERT J. RICHTER, *Appellant*.

(679 P.2d 206)

Opinion
filed March 24, 1984.

*Irving Achtenberg*, of Achtenberg & Achtenberg, P.C., of Kansas City, Missouri, argued the cause and *Mark R. Singer*, of Romain, Burger & Singer, Chartered, of Overland Park, was with him on the briefs for the appellant.

*Kenneth C. Jones*, of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, of Olathe, and *Benjamin F. Mann*, of Blackwell, Sanders, Matheny, Weary & Lombardi, of Kansas City, Missouri, argued the cause and *Thomas E. Ruzicka*, of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, of Olathe, and *John K. Brungardt*, of Blackwell, Sanders, Matheny, Weary & Lombardi, were with *Benjamin F. Mann* on the brief for the appellees.

The opinion of the court was delivered by

HERD, J.: This is an injunction action. Puritan-Bennett Corporation and Puritan-Bennett Aero Systems Company (Puritan), brought this action against their former employee, Robert Richter, seeking enforcement of restrictive covenants in his employment contract. The district court enjoined Richter from rendering services to any organization in the aircraft emergency

oxygen equipment industry including Figgie International, Inc., for a period of eleven months. Richter was also permanently enjoined from disclosing Puritan's trade secrets. Richter appeals.

Puritan (appellees) is engaged at its Lenexa facility in the design and manufacture of emergency oxygen breathing equipment and, in particular, in the manufacture of chemical oxygen generators for use in passenger aircraft. The market for such products consists primarily of five manufacturers of commercial aircraft frames. Commercial airlines are also customers, but they buy emergency oxygen products from approved lists provided by the manufacturers, so the five aircraft framemakers are the key to the world market.

Appellees' only significant competitor is the Scott Aviation Division of Figgie International, Inc., and with specific regard to chemical oxygen generators Scott is appellees' only competitor.

Appellant Richter began working for Puritan in December, 1973, as a project engineer. On the day he reported for work at Puritan's Lenexa facility, he signed a hiring agreement. Paragraphs four and five of the agreement prohibited him from disclosing, both during and following his employment, trade secrets and proprietary information of Puritan. Paragraph nine of the contract prohibited Richter from rendering services, directly or indirectly, to any organization competitive with the business of Puritan for a period of one year after termination of his employment.

Prior to coming to Puritan, appellant had no experience in the design or manufacture of oxygen breathing apparatus. While at Puritan he received successive promotions. He was appointed director of engineering in 1975 and in December, 1980, was promoted to director of operations. During the course of his employment he became involved with and highly knowledgeable about appellees' chemical oxygen generators, directly participated in the preparation of new proposals made to customers and was in regular contact with the purchasing and engineering departments of Puritan's customers. Richter acquired knowledge of Puritan's product weaknesses, as well as strengths, and had access to trade secrets and proprietary information of appellees. Shortly before he resigned, Richter participated in Puritan's product development planning and marketing strategy for the next five years.

In March, 1981, appellant announced his resignation from appellees effective March 20, 1981, and his acceptance of the director of engineering position with appellees' competitor, the Scott Division of Figgie. In this position he has been involved in the supervision of seventy-five to one hundred employees engaged in the engineering and production of oxygen equipment. Certain of these employees are engaged in the development of chemical oxygen generating equipment for use in passenger aircraft. As part of his responsibilities for Scott, appellant has also had responsibility over the design and production of chemical oxygen generating systems for use in commercial passenger aircraft and he participates in the marketing of such products.

Puritan filed suit on March 16, 1981, for an injunction preventing Richter from violating the noncompetition covenant contained in the hiring agreement and to prevent him from disclosing trade secrets and confidential information. After a hearing on the motion, the trial court entered an injunction enjoining appellant from disclosing any trade secrets or confidential commercial information of appellees but refused to prohibit him from working for Scott. On April 20, 1981, Richter began work for Scott. On June 2, 1981, the trial court, after further hearing, modified its earlier order to restrain him from discussing any aspect of Puritan's business involving the research, development, production or sale of gaseous or chemical aircraft emergency oxygen equipment.

On July 16, 1981, a hearing was held on Puritan's request for a permanent injunction. In its August 24, 1981, decision the trial court entered an order making its earlier injunction permanent but denying Puritan's request for an injunction prohibiting Richter from working for a Puritan competitor. The trial court expressly found the terms of the hiring agreement were reasonable but held the agreement was unenforceable due to lack of consideration.

Puritan appealed the trial court's order to the Court of Appeals. On January 20, 1983, that court entered its decision reversing the trial court on the issue of the consideration for the restrictive covenant in the hiring agreement. See *Puritan-Bennett Corp. v. Richter*, 8 Kan. App. 2d 311, 657 P.2d 589, *rev. denied* 233 Kan. 1092 (1983). The Court of Appeals specifically found Puritan's continued employment of Richter after his signing of the hiring

agreement represented sufficient consideration to make the agreement enforceable. Although the original one-year restriction in the agreement had expired on appeal, the court noted the trial court had the equitable power to extend the term in order to carry out the purpose of the agreement on remand.

The court remanded the case with directions to the trial court to consider whether appellees were entitled in equity to an extension of the term of noncompetition. The court also directed the trial court to consider whether broader relief against disclosure of trade secrets was compelled by the terms of the hiring agreement. A motion for rehearing and petition for review were both denied.

Following denial of Puritan's petition for review, the parties met with the trial court in an informal conference. At the conference, the trial court ruled an evidentiary hearing was unnecessary on remand. Richter subsequently filed several requests for an evidentiary hearing. These were all denied by the trial court.

Puritan then filed a motion to modify the original injunction in light of the Court of Appeals decision. In response, appellant filed a memorandum opposing appellee's motion to modify the injunction.

On August 30, 1983, the court modified the previous injunction. The modified injunction substantially adopted the hiring agreement and enjoined Richter from working for Figgie International, Inc. for eleven months from September 9, 1983. This appeal followed.

Appellant initially argues the trial court erred in applying the restrictive covenants of the hiring agreement since they were more than reasonably necessary to protect appellees.

In Kansas, it is well recognized that a restrictive covenant in an employment contract will only be applied to the extent it is reasonably necessary under the facts and circumstances of the particular case. See *Eastern Distributing Co., Inc. v. Flynn,* 222 Kan. 666, 670, 567 P.2d 1371 (1977), and *Foltz v. Struxness,* 168 Kan. 714, 215 P.2d 133 (1950). The district court in this case found in its initial conclusions of law that the contract was reasonable in its scope. The appellant did not appeal from that ruling. Consequently the Court of Appeals stated: "The trial court found the covenant in this case to be reasonable and that point is not disputed on appeal." 8 Kan.App. 2d at 313. This

would seem to bar the raising of the issue now since the general rule is where appellant fails to brief an issue, that issue is waived or abandoned. *Friends University v. W. R. Grace & Co.*, 227 Kan. 559, 561, 608 P.2d 936 (1980). On remand, however, the district court again found the agreement reasonable. Also, appellant validly argues the issue was not relevant until the case was remanded and the district court applied the restrictive covenant of the contract for the first time. The trial court finding there was no consideration for the contract provision rendered its determination of reasonableness mere dicta. Richter raised the issue of reasonableness on remand. Thus, the issue is properly before us.

Richter alleges the modified order of the district court issued on remand was overbroad in that it was more than was reasonably necessary since it barred him from communicating with Figgie in general, rather than merely precluding the communication of trade secrets. For support appellant cites *Allis-Chalmers Mfg. Co. v. Continental Aviation & Eng. Corp.*, 255 F. Supp. 645 (E.D. Mich. 1966). In that case, an engineer who had directly participated in the design and production of fuel-injection distributor-type pumps left his first employer to join a competitor who manufactured distributor-type pumps as well as other products. The court issued an injunction prohibiting the engineer from any work in the area of fuel-injection distributor-type pumps. This afforded practical protection to the plaintiff's trade secrets, while allowing the former employee to continue work. That court stated:

"Thus, the injunction granted is as restricted as possible to protect the secrets involved without undue restraint on [the engineer's] right to pursue his chosen vocation, only prohibiting work in the design and development of distributor type pumps." 255 F. Supp. at 654.

By comparison, in this case, the court's modified order stated:

"[D]efendant is enjoined from disclosing any commercial property, confidential information, data, records, practices, and other trade secrets of plaintiffs. More specifically, defendant is enjoined from disclosing any of plaintiffs' compositions, details or methods of product preparation, uses of plaintiffs' technology and its methods of application, information concerning plaintiffs' customers, specifications and formulations for plaintiffs' products, information relating to the plaintiffs' research, development, production or sales techniques of gaseous and/or chemical aircraft emergency oxygen equipment, or any other information connected with any aspect of plaintiffs' business."

Paragraphs four and five of the Hiring Agreement provide:

4. "That in addition to my acquaintance with the various aspects of any of the aforesaid items of commercial property of the Company, my activities in its employ may give me information about similar activities of others within the Company as well as with confidential information, data, records, practices and other trade secrets of it, exemplified by, but not restricted to, compositions, details of methods of preparation, varied uses and methods of application of its products, its customers, their specifications, and uses and methods of application, and formulations made, of products bought from the Company; all of which are hereinafter referred to as its 'trade secrets'.

5. "Not to disclose to others during my employment or at any time thereafter except as the Company may authorize in writing or a Court order may require, any information concerned with any of the Company's aforesaid commercial property or trade secrets, or any information connected with any aspect of the Company's business; and that this restriction against disclosure similarly applies to prevent me from submitting for publication in any scientific, trade, or other journal any such aforesaid information as any part or the whole of any item or article submitted for publication therein, without written approval of one duly authorized by the Company to so approve."

It is readily apparent the trial court closely followed the provisions of the Agreement in formulating the scope of the injunction. Therefore, an attack on the reasonableness of the injunction is in effect an attack on the reasonableness of the Hiring Agreement.

Hiring agreements which restrict communication of ideas in general, rather than purely trade secrets, have been held unreasonable. In *Great Lakes Carbon Corp. v. Koch Industries*, 497 F. Supp. 462 (S.D.N.Y. 1980), the court reasoned that employment contracts which forbid communication of information which is not a trade secret by former employees to competitors resulted in a prohibition of employment in an individual's area of expertise, which is unreasonable and thus not allowed under law. The *Koch* court stated:

" 'Where the knowledge does not qualify for protection as a trade secret . . . we see no reason to inhibit the employee's ability to realize his potential both professionally and financially by availing himself of opportunity.' [Citation omitted.]

. . . .

"The definition of [trade] secrets so as to include information of every kind obtained by the employee is absurd." 497 F. Supp. at 471.

See also *E. W. Bliss Company v. Struthers-Dunn, Inc.*, 408 F.2d 1108 (8th Cir. 1969), and cases cited therein (broad prohibition of trade secret communication is not allowed since it could enjoin

employees from employment in a wide field); *Hampton v. Blair Manufacturing Company*, 374 F.2d 969 (8th Cir. 1967) (injunction which protected trade secrets was too broad since it included ordinary uses); *Corica v. Ragen*, 140 F.2d 496 (7th Cir. 1944) (injunction was too broad and sweeping because it restrained lawful communication of employee).

Strict enforcement of paragraphs four and five of the Hiring Agreement set out above would virtually bar appellant from the practice of his profession. These provisions go far beyond trade secrets and are, therefore, unreasonable. We conclude the injunction against Richter should be modified enjoining him from disclosing information relating to Puritan-Bennett's research, development, production or sales techniques of gaseous and chemical aircraft emergency oxygen equipment. To go any further would unreasonably infringe upon appellant's right to earn a living.

For his final issue appellant argues the extension of the one-year restriction against employment provision of the hiring agreement to a time three and one-half years after his termination is an unreasonable and inequitable extension beyond the terms of the contract.

The appellant agrees with the Court of Appeals that a court of equity may extend equitable relief beyond the contract terms if reasonably necessary. The appellant argues here, however, the extension was not reasonably necessary. In support appellant contends after expiration of the contract period prohibiting employment by competitors, the appellees' need for protection ends and is no longer necessary or reasonable. On this point the Court of Appeals held: "[T]he protective purpose of an agreement which is undoubtedly reasonable but incorrectly denied enforcement by the trial court should be carried out as much as possible on remand." *Puritan-Bennett Corp. v. Richter*, 8 Kan. App. 2d at 316.

Appellant alleges the extension of the covenant is not justified since the only purpose of the noncompetition covenant here is the protection of appellees' trade secrets, and this has already been achieved by the injunction prohibiting the communication of trade secrets. The question of trade secret disclosure is not determinative of appellees' right to have the noncompetition covenant in force. The Kansas Supreme Court stated this in

*Eastern Distributing Co., Inc. v. Flynn,* 222 Kan. 666, which involved enforcement of an employee covenant not to compete. This court stated:

"The existence of trade secrets as evidence of enticing customers from a former employer is sometimes relevant, but not essential, to injunctive relief in a suit brought for breach of a covenant not to compete." p. 674.

If we accept appellant's argument, an employee noncompetition covenant would never be enforced. The purpose of the covenant is not only to prevent trade secret disclosure, but to prevent appellant from using the expertise learned from appellees to benefit Figgie. Both of these are reasonable purposes. However, in light of all the circumstances of this case and the length of time which has transpired since appellant terminated his employment with appellees, we modify the injunction restricting appellant's employment to expire with the mandate of this case.

In light of our action herein we need not discuss the other issues raised.

The judgment of the trial court is affirmed as modified.