No. 58,341

JAMES R. TROUT and ALL FREIGHT SYSTEMS, INC., ROBERT SMITH, and RAYMOND MILLER, *Appellees*, v. KOSS CONSTRUCTION CO., PAUL J. FULSOM, INC., and KANSAS DEPARTMENT OF TRANSPORTATION, *Appellants*.

(727 P.2d 450)

Opinion filed October 31, 1986.

*Kris E. McKinney*, staff attorney, Kansas Department of Transportation, argued the cause and *Michael B. Rees*, Chief Counsel, was with her on the briefs for appellant.

*Gordon M. Rock, Jr.*, of Grimshaw & Rock, Chartered, of Olathe, argued the cause and was on the brief for appellee James R. Trout.

The opinion of the court was delivered by

HOLMES, J.: The Kansas Department of Transportation (KDOT) appeals from a jury verdict and judgment in an action under the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.*, for personal injuries suffered by appellee James R. Trout, a truck driver, in an accident which occurred when his truck struck a number of horses on the highway. The jury returned a verdict for Trout of $150,000 and assessed 25% of the fault for the accident to the KDOT.

The material facts are not seriously in dispute. In 1983 the KDOT, after following standard bidding procedures, awarded a contract for resurfacing approximately ten miles of Interstate 70 to Koss Construction Company (Koss). The area of the highway to be improved was located east of Goodland in Sherman County. The plans and specifications for the project included renovation of fencing along portions of the highway being resurfaced. Koss entered into a contract with P. J. Fulsom, Inc., (Fulsom) for Fulsom to do the fence removal and renovation.

Work commenced on the project July 18, 1983, and apparently progressed without incident until October 12, 1983. On October 12, 1983, a Fulsom crew was engaged in removing fencing along a segment of the highway roughly seven miles east of Goodland. As part of their activities the Fulsom crew would replace worn or damaged lengths of wire. When they ceased work on the night of the accident, they did not put up any type of temporary fencing which would prevent livestock on adjoining pasture land from escaping and wandering onto the highway while the permanent fencing was down. The fencing operations being conducted by Fulsom were inspected by Marlene K. Bebb, an engineering technician with the KDOT. Her responsibilities included assuring compliance with the contract documents, including the Standard Specifications for State Road and Bridge Construction issued by the KDOT, and inspecting for safety on the jobsite. At the time of Bebb's last inspection between 6:00 and 6:30 p.m. on October 12, 1983, wire from the old fencing had been removed and no temporary fencing had been installed. The Fulsom crew quit work for the day about one hour later, leaving a segment of the permanent fencing down and without erecting any temporary fencing.

Shortly after eight o'clock that evening a tractor and semi-trailer being operated by James R. Trout, of Olathe, Kansas, was

westbound on I-70 traveling through the construction zone when it collided with several horses, which had strayed from the adjoining pasture onto the interstate through the opening in the fence. Trout attempted to avoid the collision but was unable to do so and struck the horses, killing three and injuring two. Trout was seriously injured and brought this action to recover for his injuries, asserting the KDOT, Koss, and Fulsom were negligent. The owner of the horses and the owner of the truck-trailer rig were originally parties in this action but were not involved in the jury verdict and are not involved in this appeal. The jury found Trout had sustained $150,000 in damages and apportioned the fault 25% to the KDOT, 25% to Koss, 40% to Fulsom and 10% to Trout. Koss and Fulsom have not appealed and although Trout filed a notice of cross-appeal, it was neither briefed nor argued and is deemed abandoned. *Puriton-Bennett Corp. v. Richter,* 235 Kan. 251, 679 P.2d 206 (1984). The appeal of the KDOT is the only matter now before this court.

The KDOT raises essentially two basic issues on appeal: one dealing with the duty imposed on it under the provisions of the KTCA, and the other issue questioning the permissible scope of delegation of duty available to the State when contracting highway improvement projects. Both of the alleged errors are based upon jury instruction No. 22 in the district court, which read:

"The Defendant Kansas Department of Transportation had a positive duty to keep Interstate 70 in a condition reasonably safe for its intended use. The Defendant Kansas Department of Transportation may not delegate to an independent contractor its primary legal responsibility to keep its highways in a reasonably safe condition for their intended use."

The KDOT asserts the instruction constitutes reversible error, contending it does not correctly state the duty of appellant under the KTCA and erroneously limits the authority of the KDOT to delegate responsibility to another. The KDOT is not asserting that its activities in this case constitute an exception to the KTCA under K.S.A. 75-6104.

It is the duty of the trial court to properly instruct the jury upon the theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are

substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal. *Douglas v. Lombardino,* 236 Kan. 471, 480, 693 P.2d 1138 (1985). The standard instructions used in negligence actions are adequate under the KTCA if the only duty required of a private person would be to perform in a non-negligent manner. *Rollins v. Kansas Dept. of Transportation,* 238 Kan. 453, 711 P.2d 1330 (1985).

Although this appeal is based solely upon alleged error in the giving of instruction No. 22, it was not the only instruction bearing upon the duties of the KDOT. Instruction No. 13 set forth the claims of Trout as they applied to the KDOT and included five specific acts of negligence, including failure to keep the highway in a reasonably safe condition; failure to maintain the fencing sufficiently to prevent livestock from entering upon the highway; and failure to adequately inspect and supervise the fencing operation. Instruction No. 17 sets forth the position of the KDOT in denying any negligence on its part and asserting that all of the fault was attributable to plaintiff and the other codefendants. Instruction No. 19 expressed the liability of the KDOT and the two corporate codefendants for the actions of their employees. Instruction Nos. 21 and 23 explained the duty of Koss and Fulsom to exercise reasonable care for the protection of others upon the highway. Instruction No. 24 gave the definition of an independent contractor. Instruction No. 33 explained the terms "negligence" and "fault" and advised the jury of the effects of comparative negligence. Instruction No. 35 advised the jury further on the apportionment of fault and considerations which should be given thereto. Other instructions applicable to Koss and Fulsom set forth their alleged acts which Trout contended constituted negligence, and the contentions of each defendant in asserting negligence on the part of the plaintiff and the other codefendants. The thirty-five instructions were comprehensive in nature and thoroughly covered the various positions and contentions of the parties.

The KDOT contends that the first sentence of Instruction No. 22 improperly imposes a "pre-KTCA" municipal liability standard upon the State. Further, it is contended that use of the words "positive duty" compounds the error by placing undue emphasis on the State's duty.

Prior to passage of the KTCA, the right of action against the State, for damages occurring on our highways, was not based on negligence but was statutory. *Kelley v. Broce Construction Co., Inc.*, 205 Kan. 133, 138, 468 P.2d 160 (1970). Under our tort claims statute the State incurs liability for damages under ordinary negligence principles. K.S.A. 75-6101 *et seq.* Since common-law negligence principles have always applied in cases of municipal liability for highway and street defects, *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982), many of the rules developed in litigation involving municipalities are now applicable in cases involving a state agency. Palmer, *A Practitioner's Guide to the Kansas Tort Claims Act*, 48 J.B.A.K. 299, 304 (1979).

The duty of the State under the KTCA to maintain its highways was most recently examined in *Rollins v. Kansas Dept. of Transportation*, 238 Kan. 453, Syl. ¶ 3, where the court stated that "[i]n doing highway maintenance work, the duty under the tort claims act, absent any statutory exceptions, which the Department of Transportation of the State of Kansas owes the public is the same that would be required of a private individual doing the same work." Although the prior statutory liability of the State to maintain the highways in a reasonably safe condition was repealed by the KTCA, even the KDOT does not contend that it has no duty with regard to safety upon the highways. Instead, it argues the instruction in this case placed strict liability upon the State for any condition which makes the highway unsafe and therefore is overly broad.

The question of what duty the State bears since the passage of the KTCA was recently considered in *Toumberlin v. Haas*, 236 Kan. 138, Syl. ¶ 2, 689 P.2d 808 (1984), wherein the court held:

"Although the statutory liability of the state, counties and townships for defects in highways was repealed by the Tort Claims Act, a duty to maintain the highways remains under the general liability for negligence created by the Act."

The court went on to state no hard and fast rule could be stated that would cover all possible future situations and that the scope of the State's duty must be established on a case-by-case basis. Subsequent to *Toumberlin*, and relying on that decision, the committee on Pattern Jury Instructions adopted PIK Civ. 2d 19.01A (1986 Supp.), which closely parallels the instruction in the present case, and provides:

"The law of Kansas provides that the state has a duty to maintain its highways in a reasonably safe condition. The violation of this duty is negligence."

The KDOT argues that any reference to a duty to keep the highway in a reasonably safe condition misstates the law. It claims that by instructing the jury as done in instruction No. 22, the court improperly focused upon the condition of the highway and not the "act or omission" of the State employees as set forth in the KTCA. Appellant does not dispute that it has a duty of reasonable care to the motoring public but contends there is a difference between maintaining a highway in a "reasonably safe condition" and refraining from, by act or omission, acting negligently. We see little, if any, distinction. The maintenance of the highway in a reasonably safe condition is the duty that is owed the public while the acts and omissions of the State's employees in carrying out that duty may or may not constitute negligence.

At any given time, a particular location on a highway may be either in a "reasonably safe condition" or not in a "reasonably safe condition." What constitutes a "reasonably safe condition" will necessarily vary according to terrain, time of day, weather conditions, and other factors. If an unsafe condition arises from improper conduct by a state employee, then the State may incur liability. Similarly, if the condition arises from the failure of the State to perform a required act, liability may also result. However, if the dangerous condition arises through remote or unforeseen circumstances, of which the State had no notice, ordinarily liability will not attach.

The KDOT raises two hypothetical examples it claims illustrate the shortcoming of the questioned instruction. First, it presents a factual setting in which vandals remove a portion of pasture fencing which abuts a highway and livestock escape and wander onto the highway causing an accident. The KDOT hypothesizes that the presence of the livestock on the highway would render it unsafe and simultaneously impose liability upon the State. This hypothetical example ignores the fact that the State would not be liable for the independent torts of an independent third party when it has no notice of the conduct or resulting dangerous condition. 39 Am. Jur. 2d, Highways, Streets, and Bridges § 354. Liability under the facts presented in the hypothetical example would necessarily be based upon negligence in failing to remove the livestock within a reasonable

time after the State had notice of their presence or, if it had previous knowledge of the destroyed fence, in failing to correct the defect.

The second situation described in the brief of the KDOT envisions a motorist encountering glare ice on an exit ramp on an interstate highway. The KDOT theorizes that under instruction No. 22 it would be responsible regardless of whether the patch of ice resulted from sudden adverse weather or the KDOT's faulty highway grade design. Again, the KDOT ignores the basic concepts attendant to the law of torts. An actor is not required to expend excessive resources to guard against improbable or unforeseeable occurrences. Indeed, both the PIK instruction and the instruction given in this case below recognize that only reasonable care need be exercised. Under the present hypothetical example it does not appear, absent notice or nonfeasance, that the State would incur liability for an accident which occurred on a patch of ice. *Gorges v. State Highway Comm.*, 135 Kan. 371, 10 P.2d 834 (1932); *Gorges v. State Highway Comm.*, 137 Kan. 340, 20 P.2d 486 (1933). Conversely, as the KDOT points out, if the ice accumulated due to defective design or construction of the highway, then it may very well be that the state would be held responsible for resulting damages. *Jennings v. United States*, 207 F. Supp. 143 (D. Md. 1962), *aff'd* 318 F.2d 718 (4th Cir.1963); *Klipp v. City of Hoyt*, 99 Kan. 14, 17, 160 Pac. 1000 (1916); *Gould v. City of Topeka*, 32 Kan. 485, 4 Pac. 822 (1884).

The basic flaw in the argument of appellant is that it focuses solely on instruction No. 22 and ignores all of the other instructions. We might agree that the giving of the instruction in isolation without any others pertaining to negligence could constitute error but when it is read in context with all of the other instructions we do not think it imposes an unreasonable duty upon the State and it certainly does not create strict liability upon the part of the State. The PIK instructions are not designed to be read in isolation as if any one instruction is the only one to be given to and considered by a jury. Most, if not all, of the instructions require companion instructions to cover the law and facts as developed in each case. We conclude that our decision in *Toumberlin* and the statement of the duty of the State in PIK Civ. 2d 19.01A (1986 Supp.) when considered with other applicable

principles and instructions are correct statements of the law as it exists after passage of the KTCA. Appellant also argues that the use of the adjective "positive" places undue emphasis upon the duty and is error. We do not agree that use of the word "positive" resulted in any prejudice to the KDOT.

The second issue raised by appellant concerns the permissible scope of delegation of duty available to the State. The KDOT maintains it has the authority to delegate its duty to keep the highways in a reasonably safe condition to an independent contractor. In particular, the KDOT claims the trial court erred when it instructed the jury, in instruction No. 22, that it could not delegate its legal responsibility to keep the highway in a reasonably safe condition to an independent contractor. Assuming, arguendo, that Fulsom was an independent contractor, we find no merit in the argument of the appellant.

The common law recognizes that the responsibility for some duties is so important to the community that an employer may not be permitted to transfer it to another. *Railroad Co. v. Madden*, 77 Kan. 80, 83, 93 Pac. 586 (1908). The rule prohibiting delegation of responsibility for certain activities may be imposed by statute or common law. Prosser and Keeton on Torts § 71, p. 511 (5th ed. 1984). One such nondelegable duty is that requiring a governmental entity to maintain its highways in a reasonably safe condition for the traveling public. *Prowell v. City of Waterloo*, 144 Iowa 689, 123 N.W. 346 (1909); *Westby v. Itasca County*, 290 N.W.2d 437 (Minn. 1980); *Saari v. State of New York*, 203 Misc. 859, 119 N.Y.S.2d 507, *aff'd* 282 App. Div. 526, 125 N.Y.S.2d 507 (1953). The fact that a contractor has been engaged to perform work on a public way does not relieve the State of responsibility for injuries arising from the negligence of the contractor, where the injury results from the failure of the State to maintain the highway in a reasonably safe condition for the traveling public. 39 Am. Jur. 2d, Highways, Streets and Bridges §§ 351, 430. Another example of nondelegable duty is where an employer delegates the performance of an inherently dangerous activity. *Reilly v. Highman*, 185 Kan. 537, 345 P.2d 652 (1959). In such a case the employer will incur liability for damages inflicted in the performance of the hazardous task. In the present case the actual work of resurfacing the highway and replacing the fences may be assigned to a contractor, but not the

ultimate responsibility for safe performance of the work. Indeed, the contract documents provide the KDOT shall have responsibility in this area. While much of the burden for maintaining the construction site in a manner allowing the safe and satisfactory movement of traffic through the construction area is placed upon the contractor, it is clear from the Standard Specifications that the KDOT retains the ultimate authority to dictate safety measures to the contractor and to require compliance with such measures. To the extent that safety precautions were the responsibility of the contractor, the contract documents clearly place responsibility upon the KDOT to see that the contractual obligations are complied with by the contractor.

When instruction No. 22 is read and considered along with the thirty-four other instructions, we find no reversible error in the instructions. Obviously the jury was not misled or it would not have apportioned the fault as it did.

The judgment is affirmed.