No. 80,606

STATE OF KANSAS *ex rel.*WAYNE FRANKLIN, Secretary of Human Resources, *Appellant,* v. CITY OF TOPEKA, KANSAS, HUMAN RELATIONS COMMISSION and THELMA A. DRAYTON, *Appellees.*

(969 P.2d 852)

Opinion filed December 11, 1998.

*Merrill J. Hicklin Befort*, of the Kansas Department of Human Resources, argued the cause and was on the brief for appellant.

*Judith L. Olander*, assistant city attorney, argued the cause, and *Linda P. Jeffrey*, city attorney, was with her on the brief for appellee City of Topeka.

*Sandra L. Jacquot*, county counselor, was on the brief for *amicus curiae* Board of County Commissioners of Shawnee County.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a declaratory judgment action brought by the State of Kansas on behalf of the Kansas Department of Human Resources (KDHR) against the City of Topeka (City). The district court entered judgment in the City's favor. The KDHR appealed. KDHR's motion to transfer the appeal to this court from the Court of Appeals was granted.

This dispute arose in an employment discrimination matter. Thelma A. Drayton, a former employee of KDHR, filed with the City's Human Relations Commission a complaint of race discrimination against KDHR, alleging a violation of the City's anti-discrimination ordinance. On the ground that the City does not have authority to investigate or enforce a complaint against the state agency, KDHR refused to cooperate in the investigation and filed a petition for declaratory relief in the district court.

The following facts were stipulated by the parties. In August 1997, the Secretary of KDHR received a letter from the Director of the City's Human Relations Commission advising that the City had received a complaint against KDHR by former employee Drayton. The complaint alleged race discrimination against her in job assignments and disciplinary action.

KDHR answered that the City did not have jurisdiction to investigate an employment discrimination complaint against the state agency. KDHR requested transfer of Drayton's complaint to the Kansas Human Rights Commission. The City refused.

In the district court, KDHR filed a petition for declaratory relief on the question of whether the City has authority to process employment discrimination complaints against the State and/or its agencies. Based on the stipulated facts, briefs, and oral arguments of counsel, the district court held that the City was acting within its authority in enforcing its employment discrimination ordinance against a state agency.

The sole issue in the appeal is whether the City may enforce its employment discrimination ordinance against a state agency.

This court's review of the trial court's conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The district court stated the issue as "whether through legislative enactments of the Kansas Act Against Discrimination [KAAD], K.S.A. [44-1001] *et seq.*, and the Kansas Tort Claims Act, K.S.A. [75-6101] *et seq.*, the [S]tate has waived its sovereign immunity." With regard to the former, the district court stated: "Through the KAAD, the legislature has expressly made the State liable for acts of discrimination in its employment practices." On that basis, the district court concluded that "the [S]tate has waived its immunity in cases of employment discrimination." In the Tort Claims Act, the district court found another waiver of state immunity and quoted *Commerce Bank of St. Joseph v. State*, 251 Kan. 207, Syl. ¶ 2, 833 P.2d 996 (1992):

"'Under K.S.A. 75-6103, the State is liable for damages (1) caused by the negligent or wrongful act or omission of any of its employees (2) while the employee was acting within the scope of the employment and (3) under circumstances where the governmental entity, if a private person, would be liable under the laws of this state.'"

The district court considered and ruled out the possibility that a statutory exception to the waiver of immunity might apply. First, it noted that employment discrimination is not one of the exceptions expressly identified in the Act. The district court further concluded that the exception for discretionary functions would not apply. It reasoned that the KAAD imposes a legal duty on the State to refrain from employment discrimination and that the discretionary function exception is not applicable where there is a legal duty. The district court found confirmation of its conclusion in Att'y Gen. Op. No. 77-232.

KDHR's petition for declaratory relief presented two questions for determination. The first was whether the State has waived its sovereign immunity through legislative enactments, and the second was "[w]hether the City of Topeka has exceeded its home rule powers under Article 12 § 5 of the Constitution of the State of Kansas by attempting to apply its ordinance to a dispute between an agency of the State of Kansas and one of its employees." On the second question, the district court concluded that the City was not exceeding its authority. Its reasoning began with this court's ruling in *Hutchinson Human Relations Comm. v. Midland Credit*

*Management, Inc.*, 213 Kan. 308, Syl. ¶ 3, 517 P.2d 158 (1973), that cities may enact anti-discrimination ordinances. The district court continued its analysis: "The legislature has given the 'local human relations commission' the power to enforce its orders in accordance with the Kansas act for judicial review and civil enforcement of agency actions, subject to the limitations set out in KAAD. K.S.A. 12-16,106." Already having concluded that the State had waived immunity, the district court found no obstacle to the City's enforcing its anti-discrimination ordinance against a state agency.

The KAAD makes it unlawful for any employer to engage in employment discrimination based on race. The Kansas Human Rights Commission is established by the KAAD "[t]o receive, initiate, investigate and pass upon complaints alleging discrimination in employment . . . because of race." K.S.A. 44-1004(4). Administrative procedures for complaints and investigations of alleged discrimination, hearings, and remedial orders are set out in K.S.A. 1997 Supp. 44-1005. K.S.A. 44-1011 makes final orders of the Commission enforceable and any action of the Commission subject to review in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions. The KAAD defines "employer" to include "the state of Kansas and all political and municipal subdivisions thereof," thus submitting the State and its agencies to the Act's administrative procedures and judicial enforcement. K.S.A. 44-1002(b).

The City's anti-discrimination ordinance generally parallels the state statutes. The ordinance is found in § 86 of the City's Code. It creates the position of human relations executive director of the city and establishes the human relations commission. The director is responsible for receiving, initiating, investigating, deciding, and attempting to conciliate or refer complaints of discrimination. Section 86-53 incorporates certain sections of the KAAD into the City Code by reference.

The attorney general's opinion cited by the district court was' requested more than 20 years ago by the city attorney of Salina. It involved precisely the same issue as the present one. The attorney general concluded: "A Kansas city which has adopted an ordinance

prohibiting discrimination in . . . employment on the basis of race . . . may lawfully enforce such ordinance against other governmental units having offices within said city, including agencies of the state, county, and school district." Att'y Gen. Op. No. 77-232, p. 1. The reasoning that led to the conclusion was premised on this court's decision in the Hutchinson case against Midland Credit, where that city's enactment of a civil rights ordinance was approved. Att'y Gen. Op. No. 77-232, p. 2. The attorney general particularly noted the court's discussion of the lack of any preemption provision in the KAAD. Att'y Gen. Op. No. 77-232, p. 2. On the narrower question whether the city's ordinance could be applied to public employers, the attorney general relied on another Hutchinson case, *City of Hutchinson v. Hutchinson, Office of State Employment Service*, 213 Kan. 399, 517 P.2d 117 (1973). Hutchinson sued the local office of the Kansas State Employment Service and the local supervisor of the local office. The court stated that "[i]t is readily apparent the appellant's action is against a state agency, The Kansas State Employment Service." 213 Kan. at 403. The court noted that actions "against the agency involving employment service activities are brought in the name of the commissioner." 213 Kan. at 403. Then the court zeroed in on the problem:

"In the petition filed by the appellant the State Labor Commissioner is not made a party to the action. An attempt is made in the petition to set up a purely local claim against a local official for the refusal to obey a city ordinance concerning the local official's state type activities." 213 Kan. at 405.

The court concluded that because the State Labor Commissioner was an indispensable party to the action, Hutchinson's failure to name him "as a party defendant and serve the attorney general or an assistant attorney general [as required by K.S.A. 1972 Supp. 60-304(d) for service of process on governmental agencies] is fatal to the appellant's action. Accordingly, the court lacked jurisdiction over the necessary parties to proceed in the matter." 213 Kan. at 406.

The attorney general summed up his discussion of *Office of State Employment* as follows:

"The case thus stands, by clear inference, for the proposition that the state, as an employer, is not exempt from the jurisdiction of a municipal civil rights ordinance providing redress against employment discrimination. The city ordinance thus protects state employees who are employed by state agencies in offices within the city." Att'y Gen. Op. No. 77-232, p. 3.

The County and KDHR challenge the attorney general's conclusion on the ground that the issue of state exemption was not adjudicated. We agree. This court passed over the trial court's ruling on subject matter jurisdiction and affirmed on a fine point of procedure. Although the attorney general's inference may be a reasonable one, this court's decision in *Office of State Employment* is not precedent for holding that the State is subject to the City's ordinance.

KDHR does not claim that the State is immune from an employment discrimination suit by an *individual*, but it contends that a *municipality* does not have the authority to investigate and adjudicate discrimination complaints of state employees. KDHR denies the applicability of the Tort Claims Act, contending that the KAAD governs matters of discrimination. Because the KAAD does not expressly delegate authority to municipalities except in the area of housing, KDHR interprets the Act as conferring "no authority upon municipalities in employee discrimination complaints filed against" the State. KDHR concludes that the State "has not waived its sovereign immunity in this matter." We disagree.

KDHR correctly identifies the KAAD as the state legislation that governs employment discrimination complaints. In this case, however, Thelma Drayton's complaint was filed pursuant to a city ordinance rather than the state statute. The district court construed the KAAD as waiving the State's immunity in cases of employment discrimination generally. Even if that were not so, the district court's alternative or additional reasoning provides solid support for concluding that the State had waived immunity. The district court further observed that in enacting the Tort Claims Act, the legislature subjected the State to liability for wrongful acts. K.S.A. 75-6103(a) provides:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its

employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

The KAAD makes employment discrimination a wrongful act, and it creates a legal duty not to engage in unlawful discriminatory practices. K.S.A. 44-1009. As the district court noted, the discretionary function exception of the Tort Claims Act would not apply to a legal duty. Therefore, a governmental entity's violation of the legislatively created duty to refrain from discriminatory employment practices is actionable under the KAAD and the Tort Claims Act. Hence, a state agency would not be immune from a complaint of employment discrimination filed under the City's anti-discrimination ordinance, which parallels the KAAD and incorporates by reference many of its provisions.

If the State had intended to exempt itself and its agencies from liability under local anti-discrimination ordinances, it could have done so. The Tort Claims Act is open ended. Liability is the rule for wrongful or tortious acts of a governmental employee, and immunity is the exception. The Tort Claims Act enumerates more than a score of exceptions from liability. K.S.A. 75-6104. None expressly excepts employment discrimination compensable or remediable pursuant to a local ordinance. In K.S.A. 12-16,106, the legislature vested authority in local human relations commissions and directors authorized by ordinance to award compensatory damages in a discrimination case to "secure enforcement of any final orders of such commission, in accordance with the act for judicial review and civil enforcement of agency actions in amounts not to exceed any limitations prescribed in the Kansas act against discrimination." The legislature's lengthy detailing of authority and procedure contains no indication of intent to prohibit prosecution or enforcement of actions against the State. K.S.A. 12-16,106.

Notwithstanding that the State has not exempted itself from liability under local anti-discrimination ordinances, KDHR argues that a municipality's authority to enforce its anti-discrimination ordinance must be derived from the home rule provision of the state constitution. Article 12, § 5(b) of the Kansas Constitution provides, in part:

"Cities are hereby empowered to determine their local affairs and government . . . . Cities shall exercise such determination by ordinance passed by the governing body . . . subject only to enactments of the legislature of statewide concern applicable uniformly to all cities [and] to other enactments of the legislature applicable uniformly to all cities . . . ."

KDHR contends that the City's home rule authority does not extend to discrimination complaints of state employees. It argues that complaints of state employees are exclusively subject to the KAAD, legislation of statewide concern that is uniformly applicable statewide. KDHR concedes that in a case involving a private employer, this court, in spite of statewide application of the KAAD, held that it is within a city's powers to enact a civil rights ordinance. *Hutchinson Human Relations Comm.*, 213 Kan. 308. It also must concede that the state legislature has placed its stamp of approval on local anti-discrimination measures. See K.S.A. 12-16,106. Thus, the power reserved to the State to enact legislation of statewide concern uniformly applicable to all cities has not been construed as curbing local authority to enact and enforce anti-discrimination measures. The agency, however, would have the court limit a city's authority to enforce anti-discrimination ordinances to circumstances not involving state employees. For this distinction, KDHR cites no legal authority but offers the rationale that "[t]he consequences of a state employee's complaint of discrimination could affect not only individuals within the boundaries of the City of Topeka, but the rights of all state employees employed throughout the State of Kansas." In other words, KDHR seems to be arguing that even when the home rule provision generally empowers a municipality to legislate in a field such as discrimination, the provision may prohibit specific legislation within that field. No precedent for this construction has been brought to the court's attention.

KDHR cites *State ex rel. Schneider v. City of Kansas City*, 228 Kan. 25, 612 P.2d 578 (1980), as a case similar to the present case. We do not find it to be similar or persuasive. Here, an individual, a state employee, sought redress against a state agency. In *Schneider*, the City of Kansas City sought to require the Board of Regents to obtain a building permit and conform to the city's building codes. The conflict was between two governmental agencies. Thus,

*Schneider* is distinguishable on its facts. In addition, governmental immunity was not raised or argued. Kansas City argued that under its home rule authority, it could enforce its building codes upon a state agency. In rejecting the city's argument, this court noted that the State had adopted comprehensive building codes that mandated statewide compliance in the construction of school buildings, and they apparently "sometimes conflict with the codes adopted by Kansas City." 228 Kan. at 30. For that reason, the city was precluded from enforcing its building codes in the construction of the KU Medical Center. This court reasoned that

"[t]he adoption by the state legislature of comprehensive building codes would indicate that the legislature considers the construction of schools to be one of statewide importance as opposed to the local affairs of a municipality in seeking to control construction within its city limits. Insofar as institutions of higher learning under the control of the Board of Regents are concerned, we agree. . . . Due to the statutes requiring statewide uniformity in the application of the various building codes to construction projects at the various institutions of higher learning under the control of the Board of Regents, such construction does not fall within the purview of local affairs." 228 Kan. at 32-33.

This court noted that its decision was of limited application:

"As stated by one prominent author: 'No ordinance deals with an *exclusively local matter* and no statute regulates a matter of *exclusively state-wide concern*. Instead, the interests of the municipality and the state are nearly always *concurrent*.' Clark, *State Control of Local Government in Kansas: Special Legislation and Home Rule*, 20 Kan. L. Rev. 631, 662 (1972). We also recognize that the same author does not recommend the approach and conclusion we reach today. Our decision, however, is limited to the parties and factual situation before us." 228 Kan. at 33.

This court's opinion in *McCarthy v. City of Leawood*, 257 Kan. 566, 894 P.2d 836 (1995), presents a typical issue of a city's home rule powers. Leawood enacted Ordinance 1027C, which conditions building permits and plat approval for properties within the K-150 Corridor on payment of impact fees. Property owners who would be affected by the ordinance challenged it on the ground that it was not authorized under home rule. In concluding that the ordinance did not exceed the city's home rule power, the court stated and applied the following principles:

"In determining whether a legislative enactment is uniformly applicable to all cities, such legislative intent should be clearly evident before a city's right to exercise home rule power in that area is denied."

"A city ordinance should be permitted to stand unless an actual conflict exists between the ordinance and a statute, or unless the legislature has clearly preempted the field so as to preclude municipal action." 257 Kan. 566, Syl. ¶¶ 1 and 2.

In the present case, KDHR's contention is *not* that the City's right to exercise home rule power in the area of discrimination has been denied by legislative enactment of the KAAD that preempts the field and thereby precludes municipal action. Instead, KDHR's contention is that legislative enactment of the KAAD does not preempt the field of discrimination but, seemingly by virtue of its self-policing provision, the KAAD shields the State and its agencies from liability under local anti-discrimination ordinances. We find no merit in this argument. Here, there is no conflict between the City's anti-discrimination ordinance and the KAAD. The legislature has neither expressly preempted the field nor exempted employment discrimination violations from the Tort Claims Act. Absent such preemption or waiver of immunity, the City may enforce its employment discrimination ordinance against KDHR.

The judgment of the district court is affirmed.