(30 P.3d 1041)
No. 83,944

ARNOLD LEE REYNOLDS, Administrator for the Estate of Connie Reynolds, Deceased; ARNOLD LEE REYNOLDS, Individually; and RHONDA REYNOLDS, *Appellees*, v. KANSAS DEPARTMENT OF TRANSPORTATION, *Appellant*.

Opinion filed August 31, 2001.

*Vicky S. Johnson*, staff attorney, and *Michael B. Rees*, chief counsel, of the Kansas Department of Transportation, for appellant.

*Lon Walters*, of The Walters Law Firm, LLC, of Kansas City, Missouri, and *Julie Frickleton*, of Leawood, for appellees.

Before PIERRON, P.J., MARQUARDT and BEIER, JJ.

MARQUARDT, J.: The Kansas Department of Transportation (KDOT) appeals the trial court's refusal to grant its motion for summary judgment and motion for a directed verdict. We reverse.

Everett and Sylvia Jones leased approximately 40 acres on the west side of Highway 69 from the Van Kirks. Part of the property along Highway 69 contained a fence that was constructed by KDOT. The fence was built up and around the double box culvert on the Van Kirks' property.

Sylvia admitted that she and Everett had trouble keeping their cattle from going through the culvert to Lee Phillips' orchard on the east side of the highway. The Jones constructed a fence across the culvert on the west side of the highway, but found it difficult to keep it repaired when the weather was bad.

In response to a report in August 1997, Trooper Richard Lohse found 10 or 12 cows along the fence line on Highway 69. Officers cut the fence and herded the cows into their pasture; however, one escaped and got onto the highway.

While discussing a plan for locating the owner of the cows, Deputy Phillip Campbell heard a "thud." A car driven by Arnold Reynolds struck the escaped cow. The car went off the roadway and struck a rock embankment. Arnold's wife, Connie, did not survive the accident. Arnold's daughter, Rhonda, suffered severe injuries.

In March 1998, Arnold filed a lawsuit against the Van Kirks, KDOT, and Everett, on behalf of himself, individually, and on Connie's behalf, claiming negligence for failing to repair, construct, and/or maintain a fence that would have prevented an escaped cow from entering the highway. Rhonda joined in the lawsuit.

The Van Kirks and KDOT filed separate motions for summary judgment. While the summary judgment motions were pending, Arnold and Rhonda settled their case against Everett. The Van Kirks' motion was granted. KDOT's motion was denied. Arnold and Rhonda proceeded to trial against KDOT.

After the close of evidence, KDOT moved for a directed verdict, claiming that the only issues raised were issues of law that should not be decided by a jury. The trial court denied KDOT's motion. The jury returned a verdict that found KDOT 35% at fault, Everett 45% at fault, and Arnold 20% at fault. The jury awarded Rhonda $705,521.65 and Arnold $473,774.70. KDOT timely appeals.

In ruling on motions for a directed verdict and summary judgment, the trial court is required to resolve all facts and inferences to be drawn from the evidence in favor of the party against whom the ruling is sought and, where reasonable minds could reach different conclusions based on the evidence, the motion must be denied and the matter submitted to the jury. The same rule applies when appellate review is sought. See *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000); *Reeves v. Carlson*, 266 Kan. 310, 313, 969 P.2d 252 (1998). Summary judgments are to be granted with caution in negligence actions. *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998).

KDOT claims that it has no statutory duty to maintain its fence in a manner that would prevent an escaped cow from entering the highway and the duty for controlling an animal lies solely with the owner of the animal. The resolution of the issues in this case is not that simple.

Kansas fence law is contained at K.S.A. 29-101 *et seq.* Generally, all domestic animals, excluding cats and dogs, are required to be enclosed within a fence. The statute does not designate who is responsible for erecting and maintaining the fence. In 1986, the legislature moved away from strict liability and enacted the rule of

ordinary negligence when dealing with domestic animal trespass. See K.S.A. 29-108. Common sense tells us that the owners of animals should be responsible for keeping them enclosed. However, in those instances where KDOT has constructed a fence, further analysis is required.

KDOT contends that there is no case law to support the notion that it must maintain a cattle-tight fence. Arnold and Rhonda agree that KDOT is not required to maintain a cattle-tight fence; however, their contention is that KDOT was negligent in not repairing a damaged fence designed to limit access to the highway.

David D. Arbogast, a maintenance supervisor for KDOT, testified that not all fences are repaired immediately when KDOT receives a damage report. KDOT makes a differentiation between fences that are erected to keep individuals and vehicles from entering or leaving the roadway in unauthorized areas, and fences that are erected where livestock is pastured. In places where livestock is pastured, the fence is repaired immediately, "day or night." There is no record that anyone reported to KDOT that this fence was damaged. There was no evidence that the cow had escaped where the fence was damaged.

Under K.S.A. 2000 Supp. 75-6103 of the Kansas Tort Claims Act, the State is liable for damages (1) caused by the negligent or wrongful act or omission of any of its employees; (2) while the employee was acting within the scope of the employment; and (3) under circumstances where the governmental entity, if a private person, would be liable under the laws of this state. *State ex rel. Franklin v. City of Topeka*, 266 Kan. 385, 387, 969 P.2d 852 (1998).

Arnold and Rhonda claim that KDOT was negligent in failing to repair the fence. In order to establish liability for negligence, the plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages. *Kirk v. City of Shawnee, Kansas*, 27 Kan. App. 2d 946, 950, 10 P.3d 27 (2000). The threshold question here is whether KDOT owed a duty to Arnold and Rhonda, which is a question of law. Whether the duty has been breached is a question of fact. *Calwell v. Hassan*, 260 Kan. 769, 777, 925 P.2d 422 (1996).

Arnold and Rhonda claim that KDOT owed them a duty under § 324A of the Restatement (Second) of Torts (1977). The initial requirement for the application of § 324A is that the defendant undertook to render services to another. However, the services rendered must be those which the defendant recognizes as necessary for the protection of a third person. Moreover, in order to meet this threshold requirement, the evidence must show that the defendant did more than act but through affirmative action assumed an obligation or intended to render services for the benefit of another. *Calwell*, 260 Kan. at 784-85.

It is undisputed that KDOT did not fence the area across the mouth of the culvert on the Van Kirks' property. William Lackey, a retired KDOT employee, testified that KDOT would never put a fence across the mouth of a culvert. Lackey testified that it was up to the individual farmer to fence along the property line. Lackey noted that the purpose of the fence KDOT erected was to prevent landowners from driving through a ditch and onto the highway at random points. Lackey stated that no drainage structure in the state was fenced and the fence was not a cattle fence.

The trial court, in denying KDOT's motion for directed verdict, ignored the issue of whether KDOT had a duty to Arnold and Rhonda with regard to the fence repair. The trial court stated that there was a jury question regarding whether the maintenance of the fence contributed to the accident. That would indeed be the case if KDOT had constructed a fence across the entirety of the Van Kirks' property and failed to perform necessary maintenance. It is undisputed that the cattle escaped the Van Kirks' property through the culvert.

Both parties cite *Trout v. Koss Constr. Co.*, 240 Kan. 86, 727 P.2d 450 (1986), in their briefs. In *Trout*, KDOT had contracted with Koss Construction Company (Koss) to resurface a portion of Interstate 70. Koss hired P.J. Fulsom, Inc. (Fulsom) to perform fence removal and renovation. Fulsom removed a section of fence which was not replaced before it ceased work for the evening. A KDOT inspector saw the fence and knew that the wire had been removed and no temporary fence had been installed. Some horses strayed onto the highway through the gap in the fence. The horses

were hit by a tractor and semi-trailer driven by Trout. Trout was seriously injured and brought suit against KDOT, Koss, and Fulsom. The jury apportioned the fault of 25% to KDOT, 25% to Koss, 40% to Fulsom, and 10% to Trout.

In *Trout*, The Kansas Supreme Court affirmed the jury's verdict against KDOT, noting that KDOT owed the public the same duty as any private individual doing the same work. 240 Kan. at 93-94. Moreover, the court recognized that the State has a duty to maintain its highways in a reasonably safe condition and that a violation of that duty was negligence. The court recognized that a "reasonably safe condition" will vary according to terrain, time of day, weather conditions, and other factors. 240 Kan. at 90-91. The facts of the instant case are distinguishable in almost every aspect from the *Trout* case.

While it is true that KDOT has a duty to protect the motoring public, we do not believe this duty requires KDOT to fence every inch of land along our state's vast highway system.

This accident was a tragedy. However, the cows escaped through an unfenced area. The fact that an area of fence across the street from the culvert may have been damaged is of little consequence, because the Reynolds failed to come forward with evidence to support their theory that the cow they hit came through that part of the fence after its initial escape from the Van Kirks' property.

KDOT also addresses the impact of its maintenance manual. We would be faced with a different question if KDOT would have fenced the entire length of the Van Kirks' property. KDOT correctly notes that it did not undertake to confine the Jones' cows.

The question of whether KDOT owed a duty to Arnold and Rhonda is a question of law. See *Calwell*, 260 Kan. at 777. We hold that KDOT did not owe a duty to Arnold and Rhonda and, thus, could not have been found negligent. The trial court erred by not granting KDOT's motion for a directed verdict.

KDOT also contends that there is insufficient evidence of a causal link between any alleged act of negligence by KDOT and the accident for the case to have gone to the jury. KDOT maintains that it is unclear how the cow came to be on the highway.

The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces injury and without which injury would not have occurred, the injury being the natural and probable consequence of the wrongful act. Ordinarily, questions of negligence, including proximate cause, are questions of fact to be resolved by the trier of fact. However, where all the evidence relied upon by a party is undisputed and susceptible of only one inference, the question of proximate cause becomes a question of law. *Cullip v. Domann*, 266 Kan. 550, 556, 972 P.2d 776 (1999).

We believe that the proximate cause of the accident was the escape of the cow through the culvert. As we have noted, KDOT is not responsible for the Jones' failure to construct a fence across the culvert. Without a duty, KDOT cannot be held liable for the accident.

The fencing on the east side of Highway 69 was damaged. It was estimated that the fence had a cracked post that had been leaning for approximately 18 months. Phillips, whose property was bordered by the damaged fence, testified that deer went through the fence and knocked it to the ground.

Deputy Campbell, who herded the Jones' cows back into a pasture, saw the cow jump a guard rail, run 25 or 30 feet, and then "[clear] with no problem at all a four-foot high fence." However, he did not see the cow enter the roadway. Deputy Nick Rothwell also saw the cow jump several fences and a guard rail.

A witness who inspected the section of damaged fence did not see any cow hair, manure, or trampled foliage and grass to evidence that a cow crossed at that point.

We agree with Arnold and Rhonda's assertion that causation may be proven by circumstantial evidence. However, in this case, there is no evidence that the cow crossed through the damaged fence. Eyewitness accounts and physical evidence point to the cow that escaped again which jumped any number of intact fences before making its way back to the highway. The evidence presented did not prove that any negligence by KDOT was the proximate cause of the accident. Accordingly, the jury's verdict must be reversed. The trial court is instructed to enter a verdict on behalf of KDOT.

Reversed and remanded with instructions.